# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-10080-NMG |
| | ) | |
| DAVID SIDOO et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DOUGLAS HODGE'S RESPONSE TO THE GOVERNMENT'S MOTION FOR HEARING REGARDING CONFLICTS OF INTEREST

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

I.  There is No Disqualifying Conflict of Interest Concerning Ropes & Gray's
Concurrent Representations of Mr. Hodge and USC................................................................. 5

    A.  No actual conflict currently exists ....................................................................... 5

    B.  No potential conflict presents grounds for disqualification................................. 9

II.  Any Future Conviction Could Not Be Successfully Challenged Based on Ropes &
Gray's Concurrent Representation of Mr. Hodge and USC. ................................................... 15

III. Ropes & Gray's Representation of Mr. Hodge and Ms. Henriquez Is Proper........................ 17

CONCLUSION ........................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Altova GmbH v. Syncro Soft Srl*,
    320 F. Supp. 3d 314 (D. Mass. 2018) ......................................................................13

*Bryan Corp. v. Abrano*,
    474 Mass. 504 (2016) ......................................................................................................13

*Bucuvalas v. United States*,
    98 F.3d 652 (1st Cir. 1996)..............................................................................................15

*Commonwealth v. Boateng*,
    438 Mass. 498 (2003) ......................................................................................................11

*Commonwealth v. Mosher*,
    455 Mass. 811 (2010) ......................................................................................................11

*Harrison v. Fisons Corp.*,
    819 F. Supp. 1039 (M.D. Fla 1993)................................................................................11

*High Point Sarl v. Spring Nextel Corp.*,
    No. 09-cv-2269-CM-DJW, 2011 WL 147527 (D. Kan. Jan. 8, 2011) ..........................12, 13

*In re Cendant Corp. Sec. Litig.*,
    124 F. Supp. 2d 235 (D.N.J. 2000).................................................................................13

*In re Grand Jury Proceedings*,
    859 F.2d 1021 (1st Cir. 1988)........................................................................................5, 9

*In re Wagar*,
    No. 06-mc-127, 2006 WL 3699544 (N.D.N.Y. 2006) ....................................................12

*Luis v. United States*,
    136 S. Ct. 1083 (2016)......................................................................................................4

*Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner*, LLP,
    473 Mass. 336 (2015) ....................................................................................................6, 8

*Miller v. United States*,
    564 F.2d 103 (1st Cir. 1977)...........................................................................................15

*Moore v. United States*,
    950 F.2d 656 (10th Cir. 1991) ........................................................................................14

*People v. Dancer*,
    45 Cal. App. 4th 1677 (1996) .........................................................................................12

*People v. Tomasky*,
    36 A.D.3d 1025 (N.Y. App. Div. 2007) ..............................................6

*State ex rel. Neb. State Bar Ass'n v. Frank*,
    631 N.W. 2d 485 (Neb. 2001) ........................................................13

*Sumitomo Corp. v. J. P. Morgan & Co.*,
    No. 99-cv-4004 (JSM), 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000) ....................12

*Swanson v. Wabash, Inc.*,
    585 F. Supp. 1094 (N.D. Ill. 1984) ..................................................12

*Sykes v. Matter*,
    316 F. Supp. 2d 630 (M.D. Tenn. 2004).............................................12

*United States v. Arias*,
    351 F. Supp. 3d 198 (D. Mass. 2019) ...............................................13

*United States v. DiCarlo*,
    575 F.2d 952 (1st Cir. 1978) ...............................................5, 15, 16

*United States v. Diozzi*,
    807 F.2d 10 (1st Cir. 1986)............................................................5

*United States v. Fahey*,
    769 F.2d 829 (1st Cir. 1985) .....................................................15, 16

*United States v. Foster*,
    469 F.2d 1 (1st Cir. 1972)...........................................................16

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006)...........................................................4, 5, 16

*United States v. Jeffers*,
    520 F.2d 1256 (7th Cir. 1975) ...................................................11, 15

*United States v. Kilpatrick*,
    798 F.3d 365 (6th Cir. 2015) .....................................................11, 15

*United States v. Lorenzana-Cordon*,
    125 F. Supp. 3d 129 (D.D.C. 2015)...........................................11, 12, 13, 14

*United States v. Panzardi Alvarez*,
    816 F.2d 813 (1st Cir. 1987).........................................................4

*United States v. Poulsen*,
    No. 2:06-cr-129, 2006 WL 2619852 (S.D. Ohio Sept. 12, 2006) ....................12, 14

*United States v. Sanchez-Barreto*,
  93 F.3d 17 (1st Cir. 1996)...................................................................................................2

*United States v. Zarrab*,
  No. 15-cr-867 (RMB), 2017 WL 946334 (S.D.N.Y. Feb. 15, 2017) ...........................6, 8, 11

*Wade v. State*,
  265 So. 3d 677 (Fla. Dist. Ct. App. 2019)................................................................6

*Wal-Mart Stores, Inc. v. Vidalakis*,
  No. 07-0039, 2007 WL 4468688 (W.D. Ark. Dec. 17, 2007)................................................12

*Wheat v. United States*,
  486 U.S. 153 (1988) ................................................................................................16

*Yeboah-Sefah v. Ficco*,
  556 F.3d 53 (1st Cir. 2009) ................................................................................15, 16

**Other Authorities**                                                                 **Page(s)**

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 92-367 (1992) ...............................12

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-434 (2004) ................................6

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-435 (2004) ................................9

Ass'n of the Bar of the City of N.Y. Comm. on Prof'l Ethics, Formal Op. 2017-6 (2017) ..........12

Mass. R. Prof. Conduct 1.7 ..............................................................................6, 8, 9, 11

Ronald D. Rotunda,
  *Resolving Client Conflicts by Hiring "Conflicts Counsel,"* 62 Hastings L.J. 677 (2011).....12

## **INTRODUCTION**

Defendant Douglas Hodge opposes the government's Motion for Hearing Regarding Conflicts of Interest as an unsupportable challenge to Mr. Hodge's fundamental Sixth Amendment right to select the counsel of his choice to defend against the criminal charges in the Second Superseding Indictment. The government has set forth no basis for establishing an existing, actual conflict of interest or a potential future conflict that could justify the drastic measure of disqualification and the consequent harm it would inflict on Mr. Hodge. By contrast, Mr. Hodge and his counsel have carefully considered the possibility that Mr. Hodge might seek to conduct a cross-examination of a representative of the University of Southern California ("USC") and have developed a plan to resolve any potential conflict that could arise by using counsel at Pepper Hamilton LLP to conduct any such cross-examinations.

In essence, the government asks this Court to consider disqualifying Ropes & Gray LLP based on two speculative assumptions: first, that issues relating to USC will be central to Mr. Hodge's defense, and second, that this presumed "centrality" renders useless Mr. Hodge's plan for co-counsel to handle matters that are actually adverse to USC, including conducting potentially adverse cross-examinations. The first assumption is not well-grounded in the facts – the central issue in this case is Mr. Hodge's state of mind and his lack of intent to engage in fraud or bribery. And the second assumption dismisses without support the well-established practice of engaging co-counsel to handle potentially conflicted areas of litigation. In sum, the government's conclusory analysis does not meet its "heavy burden" of establishing grounds for disqualification.

There is no disqualifying conflict of interest due to either Ropes & Gray's representation of USC or to Ropes & Gray's separate representation of Elizabeth Henriquez in this case, and Mr. Hodge is willing to appear before the Court to attest to the relevant facts and circumstances and answer any questions the Court may have on potential conflicts of interest. Mr. Hodge does not

oppose the government's Motion to the extent the government is requesting that the Court "initiate an appropriate inquiry to safeguard the accused's Sixth Amendment rights." *United States v. Sanchez-Barreto*, 93 F.3d 17, 22 (1st Cir. 1996).

## BACKGROUND

On March 12, 2019, the government unsealed a criminal complaint charging 32 defendants, including Mr. Hodge, with one count of conspiracy to commit mail fraud and honest services mail fraud, in violation of 18 USC § 1349. *See* Dkt Nos. 3, 6, *United States v. Abbott et al.*, No. 19-mj-06087-MPK. Mr. Hodge learned of the charges on that same day during a vacation in Western Canada. Hodge Decl. ¶ 2. Mr. Hodge immediately traveled to Boston to appear before the Court for his Initial Appearance and retained Miranda Hooker of Pepper Hamilton, a former federal prosecutor, to represent him and to appear on his behalf in that hearing, which took place on March 13, 2019. Hodge Decl. ¶ 3.

Soon thereafter, Mr. Hodge interviewed numerous lawyers and law firms to determine the lawyers who would lead his defense team together with Ms. Hooker. Hodge Decl. ¶ 4. Mr. Hodge selected Brien O'Connor and Joan McPhee from Ropes & Gray. Hodge Decl. ¶ 4. Mr. Hodge chose Mr. O'Connor and Ms. McPhee based on a number of factors, including their experience as former federal prosecutors in high-level positions, and in particular, Mr. O'Connor's role as the former Chief of the Public Corruption and Special Prosecutions Unit at the United States Attorney's Office for the District of Massachusetts. Hodge Decl. ¶ 5. In this position, Mr. O'Connor prosecuted, and oversaw the prosecution of, a wide range of fraud and corruption cases, including prosecutions for honest services mail and wire fraud in the same office that is prosecuting the above-captioned case. O'Connor Decl. ¶ 3.

███████████████████████████████████████████████████

███████████████████████████████████████████████████



[BLACK REDACTION BARS]

During this time, Ropes & Gray was in constant communication with USC concerning its intent to represent Mr. Hodge and other defendants. O'Connor Decl. ¶ 10. [BLACK REDACTION BARS]

Since the middle of March, Mr. Hodge and his attorneys from Ropes & Gray have worked together on a near-daily basis. Hodge Decl. ¶ 11; O'Connor Decl. ¶ 12. Mr. Hodge has also met with his attorneys for multiple day-long meetings to discuss key factual issues and legal strategy. Hodge Decl. ¶ 11; O'Connor Decl. ¶ 12. Through this work, Mr. Hodge and his attorneys have formed a relationship of trust and confidence. Hodge Decl. ¶ 11; O'Connor Decl. ¶ 12. Mr. Hodge considers his decision to retain Ropes & Gray and Pepper Hamilton to serve as his counsel to be a decision of utmost importance and consequence. Hodge Decl. ¶ 12.

## ARGUMENT

The Sixth Amendment safeguards the right of a criminal defendant "to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). The Supreme Court has described a defendant's right to select counsel as "fundamental," *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016), and considers it to be "the root meaning" of the Sixth Amendment. *Gonzalez-Lopez*, 548 U.S. at 147-48. Although "the right is not absolute," courts must "pay considerable deference to a criminal defendant's actual choice of counsel." *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987). And the Supreme Court has cautioned that

wrongful deprivation of choice of counsel is "structural error," immune from review for harmlessness. *Gonzalez-Lopez*, 548 U.S. at 150. Disqualification of a defendant's chosen counsel in a criminal proceeding, therefore, is "a measure of last resort," and accordingly, "[t]he government bears a 'heavy burden' in demonstrating that disqualification is justified." *In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)).

The government has not established any present, actual conflict; the government's examples of potential future conflicts at trial and sentencing are hypothetical and unrelated to the core issue in this fraud case – that of Mr. Hodge's knowledge and intent; and Mr. Hodge will adopt the well-established practice of engaging co-counsel to conduct any potentially adverse cross-examinations of USC witnesses. Depriving Mr. Hodge of his chosen counsel at Ropes & Gray will immediately cause harm by separating Mr. Hodge from his trusted counsel who have been working diligently on his defense from its inception and communicating regularly with him on critical issues for the past three months.

## I.     There is No Disqualifying Conflict of Interest Concerning Ropes & Gray's Concurrent Representations of Mr. Hodge and USC.

### A.     No actual conflict currently exists.

In cases involving the concurrent representation of a defendant and a witness or victim, "the danger of conflicts is not so great." *United States v. DiCarlo*, 575 F.2d 952, 957 (1st Cir. 1978). Massachusetts Rule of Professional Conduct 1.7, which is based on Model Rule of Professional Conduct 1.7, governs such concurrent representations, stating that a conflict of interest exists only where a firm's representation of one client is "directly adverse" to that of another client, or where there is significant risk that the firm's representation of one client will be "materially limited" by its responsibilities to another client. Importantly, "[d]irect adversity

requires a conflict as to the *legal rights and duties* of the clients." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-434 (2004) (emphasis added); *see also* Mass. R. Prof. C. 1.7 cmt. 6; *Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner*, LLP, 473 Mass. 336, 341 (2015) (law firm's representation of one client in obtaining a patent that might interfere with another client's attempt to patent similar technology constituted indirect economic adversity rather than "direct adversity"). There is no direct adversity here because the criminal proceedings against Mr. Hodge will not directly impact USC's "legal rights and duties" – USC has no *legal* interest in whether or not there is a criminal conviction.

The government's memorandum appears to posit two bases for establishing an actual, current conflict: first, USC is the alleged fraud victim; and second, Ropes & Gray owes USC a duty of loyalty, which Ropes & Gray will violate by representing Mr. Hodge. Neither position has merit. As an initial matter, the government provides no support for the proposition that a law firm cannot represent both a criminal defendant and an alleged victim of the defendant in other, unrelated matters. To the contrary, courts permit law firms to engage in such representations. For example, a judge of the Southern District of New York recently denied the government's motion for disqualification of a large law firm that represented a defendant charged with criminal bank fraud and multiple bank clients in unrelated matters who were alleged to be the victims of the bank fraud, even though not all of the bank clients consented to the concurrent representation. *United States v. Zarrab*, No. 15-cr-867 (RMB), 2017 WL 946334, at *5 (S.D.N.Y. Feb. 15, 2017). Moreover, courts routinely reject ineffective assistance of counsel challenges based on defense counsel's concurrent or former representation of a victim in unrelated matters. *See, e.g.*, *Wade v. State*, 265 So. 3d 677, 679 (Fla. Dist. Ct. App. 2019); *People v. Tomasky*, 36 A.D.3d 1025, 1027 (N.Y. App. Div. 2007).

The government separately seeks to rely on a nebulous theory that Ropes & Gray is violating a duty of loyalty to USC by engaging in the representation of Mr. Hodge – a theory that misapprehends the purpose and function of the Massachusetts Rules of Professional Conduct. The government attempts to support its theory by reciting "Rule 1.7's underlying purpose of safeguarding loyalty in the lawyer-client relationship." Gov't Mem. at 22. Rule 1.7, however, effectively defines counsel's duty of loyalty in the context of concurrent representations by delineating where direct adversity is and is not present. Rule 1.7 thus serves the purpose of promoting loyalty between lawyers and their clients by establishing guidelines governing whether and where direct adversity exists in the context of concurrent representations. Where there is no direct adversity, there is no prohibition on concurrent representations of defendants and alleged victims. Accordingly, as set forth above, because there is no direct adversity under Rule 1.7, there is no breach of the duty of loyalty presented by Ropes & Gray's concurrent representation of USC and Mr. Hodge in unrelated matters. Simply put, the government seeks to read prohibitions into Rule 1.7 that do not exist.

That application of Rule 1.7 is consistent with counsel's duty of loyalty is evident in the circumstances presented here, as Ropes & Gray's representation of Mr. Hodge does not jeopardize its ongoing loyal and zealous representation of USC. Ropes & Gray represents USC in an advisory capacity, counseling USC on corporate matters entirely unrelated to the subject of the ongoing criminal proceedings. Ropes & Gray's representation of Mr. Hodge has no impact on the legal advice its corporate-side lawyers provide to USC. And Ropes & Gray has received no confidential information from USC that could possibly be used in Mr. Hodge's legal defense; in any event, the firm has erected an ethical wall between the USC and Hodge teams to prevent any information from passing between the teams. O'Connor Decl. ¶¶ 7-8, 11. Consequently, there is no risk that

Ropes & Gray will use confidential information in a manner that could jeopardize its duty to USC or contradict Rule 1.7's "twofold" purposes to "protect confidences" and "safeguard[] loyalty." *Maling*, 473 Mass. at 340.

Given that Ropes & Gray's representation of Mr. Hodge does not affect USC's legal interests and does not compromise Ropes & Gray's duty of loyalty to USC to protect confidences and provide zealous representation, USC is not an "affected" client under the Massachusetts Rules of Professional Conduct. Ropes & Gray, therefore never sought a waiver from USC to represent Mr. Hodge – contrary to the government's unsupported statements. O'Connor Decl. ¶ 10.[1] *See* Mass. R. Prof. Conduct 1.7(b)(4) (requiring that "each *affected* client give[] informed consent") (emphasis added); *see also* Restatement (Third) of the Law Governing Lawyers § 121, cmt. c(iii) (2000); *cf. Zarrab*, 2017 WL 946334, at *5 (not all bank clients provided law firm with waiver). Although the government argues that Ropes & Gray sought a waiver from Mr. Hodge, and thereby conceded a conflict with USC, its argument misapprehends the relevant conflicts analysis. While Ropes & Gray did seek and obtain a waiver from Mr. Hodge, the waiver requested did not pertain to any perceived "direct adversity" between Mr. Hodge and USC, but rather related to the "material limitation" that Ropes & Gray's representation of USC in unrelated matters could pose to the firm's representation of Mr. Hodge – a conflict that requires only Mr. Hodge's consent. See Mass. R. Prof. Conduct 1.7, cmt. 2 (each "affected" client must provide consent, but in the case of a "material limitation" conflict, as opposed to a "direct adversity" conflict, the only client "affected" is the client whose "representation might be materially limited.").

Finally, the government's unique reading of the duty of loyalty would prohibit law firms from engaging in numerous representations that the Massachusetts Rules of Professional Conduct

---

[1] Ropes & Gray did communicate with USC on multiple occasions to provide the reasoning for Ropes & Gray's decision to undertake the representation of Mr. Hodge. O'Connor Decl. ¶ 10.

permit, including representations of clients with competing non-legal interests. As the Rules make clear, the duty of loyalty does not encompass every situation where a law firm assumes a representation contrary to the wishes of a different client or even where the representation has the potential to harm the other client's non-legal interests, such as economic interests. *See* Mass. R. Prof. Conduct 1.7, cmt. 6 ("simultaneous representation in unrelated matters of clients whose interests are only economically adverse . . . does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients."); *see also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-435 (2004) ("economic adversity" is not "the sort of direct adversity that constitutes a concurrent conflict of interest under the Model Rules."). Rather, a law firm respects the duty of loyalty owed to its clients by excluding from the scope of its representation of a client those aspects of the matter that would be directly adverse to the legal interests of its other clients, and then receiving a "material limitation" waiver from the affected client – which is exactly how Ropes & Gray approached its representation of Mr. Hodge.

### B.    No potential conflict presents grounds for disqualification.

The government also appears to raise two bases for its asserted concern regarding the *potential* for adversity to arise in the course of this case. First, in the event of a sentencing hearing, USC may request restitution from Mr. Hodge. Second, the government anticipates calling representatives from USC to testify for the prosecution, and the government argues that Mr. Hodge's cross-examination of these witnesses will be so central to the defense as to disqualify Ropes & Gray from having any involvement in the case. But both arguments are hypothetical at this stage of the proceedings, and the First Circuit has expressed a "concern" with courts disqualifying counsel based on "inferences." *In re Grand Jury Proceedings*, 859 F.2d at 1026. Moreover, Mr. Hodge plans to resolve these potential conflicts by using co-counsel at Pepper

Hamilton to handle any cross-examinations of USC representatives or any other matter which might give rise to direct adversity.

Concerning restitution, the government's argument that the Court "*will* adjudicate U.S.C.'s legal right to restitution" is hypothetical and premature. Gov't Mem. at 22 (emphasis in original). Mr. Hodge expects to succeed in his defense, and Mr. Hodge does not anticipate that the Court will adjudicate USC's right to receive restitution from Mr. Hodge. But in the unlikely event that a sentencing hearing takes place for Mr. Hodge, any issues concerning restitution to USC would be collateral to the focus of the proceedings, and the government has not explained how Ropes & Gray's co-counsel at Pepper Hamilton, Ms. Hooker, would not be able to manage restitution-related matters at sentencing.

It is likewise premature at this stage to assume that Mr. Hodge's cross-examination of USC representatives will be so central to the case as to prohibit Mr. Hodge's chosen counsel at Ropes & Gray from defending Mr. Hodge against the government's fraud charges. The government asserts that the cross-examination of USC representatives may show that there was no falsity in the applications that was material to an admissions decision or that the university's policies and practices will show that no employee breached a fiduciary duty, but the government does not explain how these technical defenses, which are cabined to an examination of USC's policies and practices, would permeate the rest of Mr. Hodge's defense strategy such that Ropes & Gray could not defend Mr. Hodge on the central issue in the case – how Mr. Hodge lacked knowledge of Mr. Singer's fraudulent enterprise and lacked the intent to defraud or bribe anyone. Indeed, at this early stage, it seems likely that any testimony from USC representatives will relate to collateral issues regarding USC's policies and practices rather than to the central issue in the case regarding Mr. Hodge's knowledge and intent. Given that a lawyer is permitted to cross-examine a client on

"peripheral" issues, it is possible that Ropes & Gray could engage in the actual cross-examination of a USC representative, consistent with the Rules. Mass. R. Prof. Conduct 1.7, cmt. 6 ("a directly adverse conflict *may* arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client.") (emphasis added); *see Commonwealth v. Boateng*, 438 Mass. 498, 508-12 (2003) (no actual conflict of interest where a criminal defendant's counsel cross-examined a client testifying against the defendant on issues "peripheral" to the defense); *see also Commonwealth v. Mosher*, 455 Mass. 811, 820 (2010) (an actual conflict arises from attorney's concurrent representation of a prosecution witness only when witness "furnishe[s] material testimony concerning a critical issue in the case").[2]

Ropes & Gray, however, does not propose to cross-examine any USC representative at trial. Instead, Ropes & Gray and Mr. Hodge agreed at the outset of the engagement that co-counsel at Pepper Hamilton, Ms. Hooker, would conduct cross-examinations of any USC representative, regardless of whether that cross-examination pertained to a critical issue. Hodge Decl. ¶¶ 6, 10; O'Connor Decl. ¶ 5. Pepper Hamilton has no current professional relationship with USC, Mr. Hodge retained Ms. Hooker prior to engaging Ropes & Gray, and Ms. Hooker remains an integral part of the defense team.

The plan for Ms. Hooker to conduct any cross-examinations of USC representatives remedies any potential conflict that could arise. Courts routinely resolve potential conflict issues by endorsing the use of counsel from a separate firm to handle cross-examinations and other potentially conflicted acts, such as taking depositions or serving subpoenas. *See, e.g.*, *United States v. Kilpatrick*, 798 F.3d 365, 375 (6th Cir. 2015); *United States v. Jeffers*, 520 F.2d 1256,

---

[2] The California Rules of Professional Conduct, which for all relevant purposes track the Massachusetts Rules, further permit an attorney to cross-examine a client so long as the examination is not "likely to harm or embarrass the witness." Cal. R. Prof. Conduct 1.7, cmt. 1.

1266 (7th Cir. 1975); *Zarrab*, 2017 WL 946334, at *5; *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 139 (D.D.C. 2015); *High Point Sarl v. Spring Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 147527, at *3 (D. Kan. Jan. 8, 2011); *Wal-Mart Stores, Inc. v. Vidalakis*, No. 07-0039, 2007 WL 4468688, at *4 (W.D. Ark. Dec. 17, 2007); *In re Wagar*, No. 06-mc-127, 2006 WL 3699544, *13 (N.D.N.Y. 2006); *United States v. Poulsen*, No. 06–cr–129, 2006 WL 2619852, at *12 (S.D.Ohio Sept. 12, 2006); *Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004); *Sumitomo Corp. v. J. P. Morgan & Co.*, No. 99 4004 (JSM), 2000 WL 145747, at *4 (S.D.N.Y. Feb. 8, 2000); *People v. Dancer*, 45 Cal. App. 4th 1677, 1687 (1996), *overruled on other grounds by People v. Hammon*, 938 P.2d 986, 990 (Cal. 1997); *Swanson v. Wabash, Inc.*, 585 F. Supp. 1094, 1097 (N.D. Ill. 1984); *see also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 92-367 (1992) (approving use of conflicts counsel to resolve conflict); Ass'n of the Bar of the City of N.Y. Comm. on Prof'l Ethics, Formal Op. 2017-6 (2017); Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel"*, 62 Hastings L.J. 677, 690-704 (2011) (examining "various decisions" endorsing use of conflicts counsel).

Courts in the above-cited cases required (or approved of a plan for) co-counsel to perform the actual act of cross-examination, serving a subpoena, or taking a deposition, and approved – either implicitly or explicitly – the full participation of potentially conflicted counsel in the remainder of the litigation.  For example, in *High Point Sarl*, the court clarified that primary counsel could review testimony and discovery obtained from a client, so long as separate conflicts counsel conducted the cross-examinations or served the subpoenas.  2011 WL 147527, at *3.  Likewise, in *Lorenzana-Cordon*, the court concluded that conflicts counsel needed to "prepare and conduct cross-examination," but that primary counsel and conflicts counsel "could discuss overall strategy of [the] case."  125 F. Supp. 3d at 133-34, 139-140.

The government provides no citation for its contrary position that Ropes & Gray is prohibited from representing Mr. Hodge even where the firm will not be involved in the cross-examinations of any USC witnesses. Instead, the government cites cases that present clear examples of conflicts, thereby illuminating the lack of a disqualifying conflict here. The one criminal case that the government cites concerned a defendant's attorney who was also representing a cooperating witness in an attempt to vacate the witness's only conviction – a step that would have deprived the defendant of "powerful" impeachment evidence. *United States v. Arias*, 351 F. Supp. 3d 198, 201 (D. Mass. 2019). The attorney, therefore, was pursuing a goal for the witness that was "directly contrary" to his duty to zealously advocate for the defendant at trial. *Id.* No similar dynamic is present here. The other five cases the government cites are even farther afield and relate to disqualification in the civil setting, and therefore do not implicate defendants' Sixth Amendment rights. Four of the five cases stand for the uncontroversial proposition that a law firm cannot represent one client in a lawsuit against another one of its clients. *Altova GmbH v. Syncro Soft Srl.*, 320 F. Supp. 3d 314 (D. Mass. 2018); *Bryan Corp. v. Abrano*, 474 Mass. 504 (2016); *State ex rel. Neb. State Bar Ass'n v. Frank*, 631 N.W. 2d 485 (Neb. 2001) (involving a worker's compensation claim rather than a lawsuit); *Harrison v. Fisons Corp.*, 819 F. Supp. 1039 (M.D. Fla 1993). The final case cited by the government, also inapposite, stands for the related principle that a law firm cannot represent both a party and an employee of the opposing party when the representation concerned the same ongoing litigation. *In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235 (D.N.J. 2000).

The government's unsupported assertion that it is not "plausible" that a defense team could use separate counsel to question USC representatives ignores the well-established practice of engaging conflicts counsel to conduct cross-examinations. *See, e.g.*, *United States v. Lorenzana-*

*Cordon*, 125 F. Supp. 3d 129, 139 (D.D.C. 2015); *United States v. Poulsen*, No. CR2–06–129, 2006 WL 2619852, at *12 (S.D.Ohio Sept. 12, 2006). And prohibiting Mr. Hodge from resolving any potential – and at this stage hypothetical – conflict by retaining separate counsel to engage in cross-examinations on likely collateral issues would severely curtail Mr. Hodge's Sixth Amendment rights. In sum, the use of co-counsel in this case provides a reasonable and effective way to safeguard the attorney-client relationship between Ropes & Gray and both of its clients, while protecting Mr. Hodge's fundamental right to select his counsel.

Finally, in contrast to the government's position that Mr. Hodge is not entitled to the counsel of his choice based on mere speculation that a conflict *could* arise and the use of co-counsel *might* be an inadequate solution, the government is taking the opposite position concerning a defendant who pleaded guilty and agreed to cooperate with the government. Under those circumstances, the government's position is that it may yet move for a hearing "to the extent the conflict has not been addressed prior to Bruce Isackson's sentencing," Gov't Mem. at 6 n.5, but that it is premature to do so at this time. The government's dual positions are untenable as a matter of conflicts analysis, given that a defendant has the "right to conflict-free representation [during] plea proceedings, including investigation and negotiation." *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991). If the government truly believed that the USC-related issues permeated the entire defense strategy, then the government could not stand by its plea deal with conflicted counsel in the Isackson matter. But instead, the government appears to be sending a message to the defendants that they are permitted to retain counsel of their choice if they plead guilty and agree to cooperate with the government, but not if they exercise their constitutional right to defend themselves. The government, therefore, is also inadvertently conveying a message to this Court

that the government does not stand by its argument on the pending motion that there is a conflicts issue that rises to the level of disqualification.

## II.     Any Future Conviction Could Not Be Successfully Challenged Based on Ropes & Gray's Concurrent Representation of Mr. Hodge and USC.

Mr. Hodge would not be able to successfully challenge a conviction on Sixth Amendment conflict-of-interest grounds because (i) no actual conflict exists and (ii) Mr. Hodge has knowingly and voluntarily waived any potential conflict.

First, a defendant challenging a conviction on the grounds of an unconstitutional concurrent conflict of interest must show an "actual" conflict. *Miller v. United States*, 564 F.2d 103, 106 (1st Cir. 1977); *United States v. Fahey*, 769 F.2d 829, 835 (1st Cir. 1985). An "actual" conflict is not a "mere theoretical division of loyalties," but some adverse effect on "the adequacy of [the defendant's] representation" due to the conflict. *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 73 (1st Cir. 2009) (quoting *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)). Courts subject Sixth Amendment claims based on an attorney's "solely speculative" pecuniary interests – such as an interest in obtaining future business from a current client – to a presumption that the lawyer will "subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." *United States v. DiCarlo*, 575 F.2d 952, 957 (1st Cir. 1978) (quoting *Jeffers*, 520 F.2d at 1265); *see Bucuvalas v. United States*, 98 F.3d 652, 656 (1st Cir. 1996). Here, there will be no actual conflict of interest because, as detailed above, Ropes & Gray's representation of Mr. Hodge and USC does not give rise to "direct adversity," and Mr. Hodge has retained Pepper Hamilton and Ms. Hooker to conduct any potentially conflicted cross-examinations. Courts routinely reject ineffective assistance of counsel claims based on conflicted counsel where co-counsel conducted any potentially conflicted cross-examinations. *See, e.g.*, *United States v. Kilpatrick*, 798 F.3d 365,

375 (6th Cir. 2015) (noting that the appointment of independent counsel to conduct cross-examination at trial supported conclusion of no actual conflict).

Second, a defendant who knows of all the relevant facts "from the beginning" of the matter bears a particularly "heavy burden" in later raising ineffective assistance of counsel claims. *DiCarlo*, 575 F.2d at 957; *see also Yeboah-Sefah*, 556 F.3d at 67; *United States v. Foster*, 469 F.2d 1, 5 (1st Cir. 1972). Courts consistently reject Sixth Amendment claims where the defendant knowingly waived the potential conflict before trial. *See, e.g.*, *DiCarlo*, 575 F.2d at 957; *Yeboah-Sefah*, 556 F.3d at 71-74; *Fahey*, 769 F.2d at 835-36. Here, Ropes & Gray informed Mr. Hodge of Ropes & Gray's representation of USC at the beginning of the representation. Hodge Decl. ¶ 6; O'Connor Decl. ¶ 5. Mr. Hodge has already waived any limitation on his representation in his engagement agreement with Ropes & Gray, and he will attest again to his voluntary and knowing consent before the Court. Hodge Decl. ¶ 7; O'Connor Decl. ¶ 6.

Finally, in contrast to Mr. Hodge's non-existent Sixth Amendment challenge based on conflicted counsel, Mr. Hodge would preserve his right to challenge a conviction on Sixth Amendment choice-of-counsel grounds if Ropes & Gray were to be disqualified. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (overturning conviction based on deprivation of right to select counsel); *see also Wheat v. United States*, 486 U.S. 153, 164 (1988) (setting forth standard for courts evaluating appeals based on deprivation of counsel due to conflicts of interest). And as a practical matter, disqualification of Mr. Hodge's chosen counsel would result in serious harm to his legal defense. Mr. Hodge sought out Mr. O'Connor, the former Chief of the Public Corruption and Special Prosecutions Unit at the United States Attorney's Office for the District of Massachusetts, and Ms. McPhee, the former Deputy Chief of the Appeals Unit in the United States Attorney's Office for the Southern District of New York, in the days after the criminal complaint

was filed.  Hodge Decl. ¶¶ 4-5.  Mr. Hodge and his counsel at Ropes & Gray have developed a relationship of trust and confidence through regular email exchanges and phone calls and multiple lengthy meetings to discuss facts and legal strategy in depth.  Hodge Decl. ¶¶ 11-12; O'Connor Decl. ¶ 12.  Moreover, Mr. Hodge would have difficulty finding replacement counsel at this juncture given that many of the leading white collar criminal defense attorneys in Boston already represent the numerous other defendants in the ongoing criminal proceedings.

## III.     Ropes & Gray's Representation of Mr. Hodge and Ms. Henriquez Is Proper.

Mr. Hodge agrees that a *Foster* hearing on the issue of multiple representation is appropriate and is willing to appear before the court to address this issue.  To be clear, there is no conflict of interest posed by Ropes & Gray's representation of Mr. Hodge and Ms. Henriquez.  Mr. Hodge and Ms. Henriquez have no relationship with each other, and the allegations against each relate to individual alleged conspiracies with Mr. Singer that lack any common goal, interdependence, or other form of overlap.  The government cannot be permitted to strip Mr. Hodge's Sixth Amendment right to choose his counsel by its action in lumping together unrelated defendants in a single "rimless wheel" indictment.

## CONCLUSION

For all the foregoing reasons, Defendant Douglas Hodge does not object to the government's request for a hearing so that the Court may conduct a colloquy with Mr. Hodge concerning his decision to continue to be represented by the counsel of his choice.

Respectfully submitted,

/s/   Brien T. O'Connor
Brien T. O'Connor (BBO# 546767)
*brien.o'connor@ropesgray.com*
Ezra D. Geggel (BBO# 691139)
*ezra.geggel@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Phone: (617) 951-7000

Joan McPhee (BBO# 547869)
*joan.mcphee@ropesgray.com*
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000

Miranda Hooker (BBO# 661569)
*hookerm@pepperlaw.com*
PEPPER HAMILTON LLP
125 High Street
Boston, MA 02110
Phone: (617) 204-5129

DATED:  June 27, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/  Brien T. O'Connor
Brien T. O'Connor