**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-10080-NMG |
| ) | |
| DOUGLAS HODGE, ) | *Leave to File Granted on 4/30/20* |
| ) | |
| Defendant. ) | |

## DOUGLAS HODGE'S REPLY IN SUPPORT OF HIS MOTION TO MODIFY HIS SENTENCE TO IMPOSE HOME DETENTION

The government's position that Mr. Hodge must put himself in grave and potentially mortal danger in order to satisfy Section 3582's exhaustion requirement is not only fundamentally illogical and inhumane, but also premised on precedent that does not account—and could not possibly have accounted—for the unprecedented circumstances created by the COVID-19 pandemic. The exhaustion procedures set forth in Section 3582(c)(1)(A) were designed and adopted without any ability to anticipate the extraordinary dangers that have emerged from the global pandemic caused by COVID-19 that is now rapidly spreading through the country's prison system. In a manner both careless and impractical, the government seeks to rigidly enforce these procedures in this climate notwithstanding the radically altered circumstances stemming from the unprecedented public health crisis that is disproportionately impacting prison facilities nationwide. The law does not mandate such an unyielding and inhumane outcome, and the government's argument to the contrary is wrong.

As an initial matter, the government's argument that the exhaustion requirement in Section 3582(c)(1) is jurisdictional relies almost exclusively on circuit court cases that were decided prior to the enactment of the First Step Act, and thus, the exhaustion requirement at issue here. In *United*

*States v. Lugo*, No. 19-cr-000056-JAW, 2020 WL 1821010 (D. Me. Apr. 10, 2020)—the only case cited by the government where the court issued its ruling in the COVID-19 context—the court noted the circuit split as to whether the limitations of Section 3582(c) are jurisdictional. But none of the circuit decisions that *Lugo* identified as cases where the court had found the requirements to be jurisdictional specifically dealt with Section 3582(c)(1)(A)'s exhaustion requirement. *See United States v. Spears*, 824 F.3d 908, 912-16 (9th Cir. 2016) (district court did not have jurisdiction to modify sentence under § 3582(c)(2) where the guideline amendment did not lower the defendant's guideline range); *United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015) (district court did not have jurisdiction to allow defendant to withdraw plea after sentence imposed under pre–First Step Act Section 3582(c)); *United States v. Garcia*, 606 F.3d 209, 212 (5th Cir. 2010) (district court did not have jurisdiction under 18 U.S.C. § 3582(c)(2) to amend a sentence based on Rule 11(c)(a)(C) plea).

The other cases cited in *Lugo* are similarly inapposite. The *Lugo* court noted that while "the First Circuit has not weighed in on the issue," in *United States v. Griffin*, 524 F.3d 71 (1st Cir. 2008), "it quoted with seeming approval the Seventh Circuit's pre-*Taylor* statement that '[Section 3582(c) limits the substantive authority of the district court . . . [and] is a real jurisdictional rule rather than a case-processing requirement.'" *Lugo*, 2020 WL 1821010 at *3 (quoting *Griffin*, 524 F.3d at 84 (quoting *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006), *overruled by United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015))). Notably, in *Taylor*, the Seventh Circuit overruled *Smith*, the decision from which the First Circuit quoted, holding that "district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to grant a motion is absent because the statutory criteria are not met." *Taylor*, 778 F.3d at 671. But even setting aside *Taylor*'s holding, neither *Griffin* nor *Smith* addressed the

exhaustion requirements of § 3582(c)(1)(A): the *Griffin* court concluded that the requirement that the district court correct a sentence within seven days was jurisdictional, and *Smith* (before it was overruled by *Taylor*) concluded that the court was without jurisdiction to modify a sentence following issuance of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). For these reasons, Judge Talwani rejected the government's reliance on *Lugo* in addressing this same issue, squarely ruling that the "exhaustion requirements in § 3582(c)(1)(A) are nonjurisdictional." *United States v. Guzman Soto*, No. 18-cr-10086-IT (D. Mass. Apr. 17, 2020), Dkt. No. 48.

Moreover, as Judge Talwani also recently held, the procedures set forth in Section 3582(c)(1)(A) are not mandatory and may be waived. *Id.* The cases cited by the government for the contrary proposition simply stand for the uncontroversial premise that, where Congress *has provided* that a statutory exhaustion requirement is mandatory, courts may not create judicial exceptions. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (noting that "*mandatory* exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion" (emphasis added)); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements *where Congress has provided otherwise*" (emphasis added)). The government attempts to liken the exhaustion requirement at issue here to that of the Prison Litigation Reform Act of 1995 ("PLRA"), which requires a prisoner to exhaust his available administrative remedies before pursuing a claim in court, and which the Supreme Court has held to be mandatory because the statute's language "suggests no limits on an inmate's obligations to exhaust." *Ross*, 136 S. Ct. at 1856. But what the government does not account for here is the fact that, unlike the PLRA's exhaustion requirement, Section 3582(c)(1)(A) contemplates that judicial action will be taken irrespective of whether the BOP opposes the motion

for release. Section 3582(c)(1)(A)'s procedures simply "determine whether the Defendant will have the BOP's assistance in bringing his motion, or not."[1] *Guzman Soto*, No. 18-cr-10086-IT at 9. Ultimately, then, "nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release." *Id.* at 9-10.

Further, Section 3582(c)'s provision that a defendant may move the court "suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process." *Id.* The government argues that if this were true, Congress would not have "imposed a 30-day requirement at all." Gov't Opp'n to Motions to Modify Sentences ("Gov't Opp'n"), Dkt. No. 1114 at 15 n.5. Again discounting the differences between the extraordinary environment today and the environment in which Congress acted back in 2018, the government fails to recognize that a mere thirty-day waiting period "would have seemed exceptionally quick" at the time of the First Step Act's passage. *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020). Extrapolating Congress's intent to allow for *relatively* speedy judicial determination of these issues to these "exceptional times" thus counsels in favor of allowing courts to waive this requirement entirely. *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020).[2]

---

[1] The government appears to take issue with the distinction between Section 3582(c)(1)(A) and the PLRA's exhaustion requirement because it "overlooks the broad authority BOP has to release inmates to home confinement—the very relief defendants seek here—*without* court involvement." Gov't Opp'n at 15 n.5. Not so; Mr. Hodge seeks relief under Section 3582(c), which governs a *court's* authority to modify a sentence after it is imposed, either upon the BOP's motion or upon a defendant's motion. The fact that the BOP, under its separate authority, is releasing hundreds of inmates with similar profiles as Mr. Hodge to home confinement, does not change the fact that this particular statutory provision provides for judicial involvement in all motions made pursuant to it.

[2] The government suggests that *Haney* is "inapplicable" because it relies "on a Second Circuit decision interpreting a judicially created, rather than statutory exhaustion requirement." *Haney* in fact recognized that Section 3582(c)(1)(A)'s exhaustion procedures are statutory and conducted its analysis accordingly, ultimately concluding that the procedures are not mandatory. *See Haney*, 2020 WL 1821988, at *3 ("The Court is sensitive to the fact that the here-relevant exhaustion requirement is imposed by statute, rather than by case law. . . . Nevertheless, the Court concludes that Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today.").

Of course, in normal circumstances, as the government recognizes, the BOP "is in the best position" to assess a defendant's individual health circumstances and release eligibility. Gov't Opp'n at 14-15. Even in these ordinary circumstances, however, Congress contemplated that the BOP may not be able to assess defendants in a sufficiently prompt manner, and thus provided a method by which defendants may directly petition the court for a modification of their sentences. Here, the clear intent to allow courts to make this decision in certain cases applies with extra force in the context of the COVID-19 pandemic, especially where defendants "have inundated the BOP with requests for release," *Haney*, 2020 WL 1821988 at *4, and the BOP is also outright refusing to conduct such assessments for defendants who have not yet surrendered. The result requested by the government—that defendants like Mr. Hodge simply have no recourse under Section 3582—is out of line with both Congressional intent and the extraordinary, unforeseen circumstances of the COVID-19 pandemic.

Dated: April 30, 2020

Respectfully submitted,

By: /s/ *Brien T. O'Connor*
Brien T. O'Connor (BBO #546767)
*brien.o'connor@ropesgray.com*
Ezra D. Geggel (BBO# 691139)
*ezra.geggel@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Phone: (617) 951-7000

Joan McPhee (BBO #547869)
*joan.mcphee@ropesgray.com*
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000

Miranda Hooker (BBO# 661569)
*hookerm@pepperlaw.com*

PEPPER HAMILTON LLP
125 High Street
Boston, MA 02110
Phone: (617) 204-5129

*Attorneys for Defendant Douglas Hodge*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Brien T. O'Connor, hereby certify that counsel for Defendant conferred with counsel for the government regarding this motion.

*/s/ Brien T. O'Connor*
Brien T. O'Connor

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2020, I filed the foregoing with the United States District Court for the District of Massachusetts using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing.

Dated: April 30, 2020

*/s/ Brien T. O'Connor*
Brien T. O'Connor