United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 19-10080-NMG |
| Douglas Hodge, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

GORTON, J.

In this case, Douglas Hodge ("Hodge" or "petitioner") challenges the constitutionality of his October 21, 2019, guilty plea before this Court during which he pled guilty to conspiring with William "Rick" Singer ("Singer") to have five of his children fraudulently admitted to elite universities by, <u>inter alia</u>, fabricating applications, falsifying athletic credentials and bribing university employees and athletic coaches. Pending before the Court is Hodge's motion (1) for a resentencing pursuant to 28 U.S.C. § 2255, and (2) to vacate his plea to the money laundering charge (Docket No. 1143).

I. **Facts**

Hodge's conviction arises out of a case that has been widely publicized and the facts of which this Court has recited

1

several times. See Docket Nos. 1169 and 1334. Relevant here is the following:

On April 9, 2019, Hodge was indicted on charges of conspiracy to commit mail and wire fraud and honest services mail and wire fraud and conspiracy to commit money laundering. In May, 2019, the government began producing discovery on a rolling basis. After engaging in plea negotiations, Hodge ultimately decided to plead guilty, without an agreement, to both counts of the Indictment provided the government agreed not to supersede with additional charges.

On October 21, 2019, Hodge pled guilty to conspiracy to commit mail and wire fraud and honest services mail and wire fraud and conspiracy to commit money laundering. At the plea colloquy, Hodge admitted, under oath, that he had agreed to commit

> mail and wire fraud and honest services mail and wire fraud through the payment of bribes as well as the submission of falsities as part of applications for admission to USC

and that he had conspired to commit money laundering by "funneling bribe payments" through Singer's entities, The Key and KWF. Docket No. 606 at 1, 11, 14. The statement of facts to which Hodge agreed included the following:

> Hodge understood that some of the money would then be sent to specific programs at USC as a quid pro quo inducement to the employees responsible for managing those programs.

Id. at 12.

On January 9, 2020, Hodge met with the government for a proffer interview. During that proffer, Hodge admitted to knowing that his "side door" arrangement with Singer and, by extension, the coaches, was a quid pro quo distinct from the legitimate donations process.

Following the proffer and prior to Hodge's sentencing, the government submitted a statement of offense conduct to the Probation Office that described the quid pro quo payments Hodge made to facilitate his children's admission to college as "bribes," regardless of whether they were directed to a coach personally, one of Singer's entities or a USC athletic program. Hodge did not object to that characterization, despite submitting other written objections to the pre-sentence report.

Hodge's counsel filed a sentencing memorandum prior to sentencing. In it, Hodge contended that Singer informed him that his payments would be made to support university programs and under-privileged students via Singer's charity. Hodge admitted, however, that he knew Singer was falsely representing his own children as athletes and that his payments would be used as a quid pro quo inducement to university employees to participate in the fraudulent scheme.

On February 7, 2020, this Court sentenced Hodge to nine months in prison. Thereafter, the government continued its rolling production of documents to the other defendants in the

case. Hodge filed the instant motion for collateral relief on May 1, 2020.

## II. Discussion

### A. Legal Standard

Under Title 28 of the United States Code, Section 2255(a), a convicted defendant may move the court that imposed his sentence to vacate, set aside or correct the sentence if it was imposed in violation of the Constitution or laws of the United States. For example, a defendant may bring a § 2255 motion to attack his sentence "on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006).

To prevail on this kind of claim, a convicted defendant must make two showings: (1) that "egregiously impermissible conduct...antedated the entry of his plea," Ferrara, 456 F.3d at 290, and (2) that the misconduct was material to his decision to plead guilty. Id.; see also Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014).

When the misconduct involves newly emergent evidence not previously disclosed, the second prong of the analysis will depend, in large part, on whether the evidence likely would have changed the outcome of a trial. Hill v. Lockhart, 474 U.S. 52,

4

59 (1985). This inquiry compels the use of an objective standard. Id. at 59-60; see also Ferrara, 456 F.3d at 294.

### B. Resentencing

Hodge claims that the government failed to provide exculpatory evidence prior to his plea, contravening Brady v. Maryland, 373 U.S. 83, 86(1963). More specifically, he asserts that the government failed to provide: (1) evidence of Hodge's intent to make payments on behalf of his fifth child to Loyola Marymount University ("LMU") and not to the LMU basketball coach personally, and (2) general evidence that Hodge and other defendants believed their payments were donations to universities and not bribes to individual coaches.

In Brady, the Supreme Court held that the government's suppression of evidence favorable to the accused violates due process "where the evidence is material to guilt or punishment." Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005).

Here, Hodge contends that the government withheld evidence that he and other defendants understood and believed their payments to be in the nature of donations to universities and university programs, not individual bribes. Hodge points to testimony from Singer that he indicated to Hodge and others that their payments would go to the universities.

For example, Hodge cites Singer's statement to agents that, while he planned to keep Hodge's payment on behalf of his fifth

5

child for himself, he had conveyed to Hodge that his payment would go to LMU and not to an individual coach. Hodge also refers to the government's communications with Singer regarding consensually recorded phone calls wherein the government exhorted Singer to explain to prospective clients that parents' payments would go directly to coaches. Hodge argues that such evidence is exculpatory because, according to Hodge, it constituted an admission by the government that parents' explicit acknowledgment of how their payments were used was required to prove their intent to bribe.

The government responds that it did not withhold any <u>Brady</u> material nor did Hodge suffer any prejudice. The government submits that it disclosed the fact that Singer informed parents that payments would benefit universities and that the government's theory of bribery included payments intended to benefit a specific program at a university that induced a coach or administrator to participate in the fake athlete scheme. Moreover, the government avers that the distinction between intent to bribe an individual or donate to an athletic program is irrelevant as to Hodge because he made payments to both an individual coach and to athletic programs. Finally, the government asserts that Hodge admitted under oath to making payments knowingly as part of a <u>quid pro quo</u> to have his children admitted into a university.

6

The Court agrees that any "suppressed" evidence was not, in fact, exculpatory, and therefore Hodge's habeas claim is unavailing. First, the government disclosed evidence duplicative of that which petitioner claims to be exculpatory. Specifically, it disclosed that Singer told parents their payments would benefit universities. Second, by the time Singer made the consensually recorded telephone calls at issue and spoke with Hodge about the LMU payments, he had been a full participant in Singer's scheme for ten years. By that time, Hodge had made multiple payments to Singer, Singer's associates and directly to a university tennis coach (which he mailed to the coach's residence) in exchange for admission to university for four of his children. And although government agents clearly hoped that Singer would obtain explicit statements from other parents regarding their intent to bribe coaches, as to Hodge that intent can be clearly inferred from his prior conduct.

Finally, Hodge admitted under oath, at his change of plea and in his proffer interview, and as his counsel conceded in his sentencing memorandum, his payments were made as a quid pro quo to induce university insiders to offer his children admission to their universities. "This admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack." Wilkins, 754 F.3d at 30;

7

see also United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea.").

Ultimately, Hodge has not shown that the government failed to provide to him exculpatory evidence under Brady v. Maryland. Accordingly, petitioner's motion for resentencing will be denied.

### C. Money Laundering Charge

Petitioner also argues that (1) his guilty plea to money laundering was marred by the government's failure to turn over exculpatory evidence, (2) the government coerced him to plead guilty to money laundering by threatening to charge him with federal programs bribery, and (3) the money laundering charge is legally and factually unsupportable.

First, as discussed above, the Court concludes that the government did not withhold exculpatory evidence.

Second, without more, the fact that the government informed Hodge that it intended to seek a superseding indictment adding federal bribery charges against him and the other defendants does not amount to coercion. Moreover, Hodge confirmed to the Court, under oath, that his guilty plea had not been induced by any promise or assurance of any kind. At that time, this Court

found that his decision to plead guilty was knowing and voluntary.

Third, the charge of money laundering was supported by the illegal transactions underlying Hodge's wire fraud and honest services fraud charge. While it may be true that the funds were originally proceeds from Hodge's lawful employment, the moment they were used in furtherance of an unlawful scheme they became tainted. See United States v. Richard, 234 F.3d 763, 769 (1st Cir. 2000). Hodge admitted under oath that he channeled the subject payments through Singer's entities in order to conceal their nature and source. These facts are sufficient to support the charge of money laundering.

Accordingly, petitioner's motion to vacate his guilty plea as to the money laundering charge will be denied.

III. Order

In accordance with the foregoing, petitioner's motion (1) for a resentencing, and (2) to vacate his plea to the money laundering charge pursuant to 28 U.S.C. § 2255 (Docket No. 1143) is **DENIED** and his petition is **DISMISSED**.

So ordered.

_____
Nathaniel M. Gorton
United States District Judge

Dated July 1, 2020