# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 19-10080-NMG-11 |
| ) | |
| DOUGLAS HODGE, ) | **REDACTED** |
| ) | *Leave to File Under Seal Granted* |
| Defendant.  ) | *on 7/23/2020 (Dkt. No. 1419)* |

## DOUGLAS HODGE'S MEMORANDUM IN SUPPORT OF HIS MOTION PURSUANT TO 18 U.S.C. § 3582(c) FOR A MODIFICATION OF HIS SENTENCE

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

    I.    Procedural Background .............................................................................................. 2

    II.   Mr. Hodge Needed to Self-Surrender During the COVID-19 Pandemic Due to a Family Health Emergency. ......................................................................................... 2

    III.  Mr. Hodge Has Already Served a Significantly More Punitive Sentence Than the Court Intended. ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

    I.    Mr. Hodge Is Permitted to Petition the Court for Compassionate Release Under 3582(c)(1)(A). ............................................................................................................ 5

    II.   "Extraordinary and Compelling Circumstances" Warrant Modification of Mr. Hodge's Sentence. ...................................................................................................... 5

    III.  Immediate Release to Home Confinement Would Be Consistent With Section 3553(a) Factors, BOP Policy, and the Sentencing Guidelines. .................................. 10

    IV.  Mr. Hodge Alternatively Requests a Downward Modification of His Sentence ............. 13

    V.   This Court Should Allow Mr. Hodge to Self-Quarantine Upon His Release. .................. 14

CONCLUSION ................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page(s)**

*Foster v. Comm'r of Correction*,
   484 Mass. 698 (2020) ......................................................................................................9

*Glossip v. Gross*,
   135 S. Ct. 2726 (2015)..................................................................................................8, 9

*United States v. Anderson*,
   No. 15-CR-30015, 2020 WL 2521513 (C.D. Ill. May 18, 2020) ...........................................15

*United States v. Bakeas*,
   987 F. Supp. 44 (D. Mass. 1997) ....................................................................................14

*United States v. Ford*,
   No. 00-80974, 2020 WL 4207092 (E.D. Mich. July 22, 2020) .............................................15

*United States v. Halliburton*,
   No. 17-CR-20028, 2020 WL 3100089 (C.D. Ill. June 11, 2020) ...........................................15

*United States v. Hanson*,
   No. 6:13-CR-00378-AA-1, 2020 WL 3605845 (D. Or. July 2, 2020) ...................................15

*United States v. Hodge*,
   No. 20-1418 (1st Cir. May 19, 2020)..............................................................................1, 2

*United States v. Ireland*,
   No. 17-20203, 2020 WL 4050245 (E.D. Mich. July 20, 2020) .............................................15

*United States v. Jacobs*,
   No. 4:19-CR-00149, 2020 WL 3637625 (S.D. Iowa July 2, 2020) ........................................15

*United States v. Kelly*,
   No. 13-cr-00059, 2020 WL 2104241 (S.D. Miss. May 1, 2020).....................................10, 15

*United States v. Macfarlane*,
   438 F. Supp. 3d 125 (D. Mass. 2020) ......................................................................6, 10, 14

*United States v. Mueller*,
   No. 2:08-CR-00139-AB-1, 2020 WL 3791548 (E.D. Pa. July 7, 2020) ................................15

*United States v. Naphaeng*,
   906 F.3d 173 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1233 (2019) .........................................2

*United States v. Nkanga*,
   No. 18-CR-713 (JMF), 2020 WL 1529535 (S.D.N.Y. Mar. 31, 2020) .................................12

*United States v. Pena*,
   No. CR 16-10236-MLW, 2020 WL 2798259 (D. Mass. May 29, 2020) ..........................12, 15

*United States v. Pullen*,
   No. 98-40080-01-JAR, 2020 WL 4049899 (D. Kan. July 20, 2020) ......................................15

*United States v. Regas*,
   No. 3:91-cr-00057, 2020 WL 2926457 (D. Nev. June 3, 2020) ......................................7, 9, 10

*United States v. Resnick*,
   No. 14 CR 810 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) ......................................15

*United States v. Scott*,
   No. CR 95-202-CCB-2, 2020 WL 2467425 (D. Md. May 13, 2020)....................................15

*United States v. Scparta*,
   No. 18-cr-578, 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020)...............................................15

*United States v. Sloane*,
   No. CR 19-10117-IT, Dkt. No. 647 .......................................................................................6

*United States v. Smith*,
   No. 15-CR-30039, 2020 WL 3027197 (C.D. Ill. June 5, 2020) ...........................................15

*United States v. Torres*,
   No. 87-CR-593 (SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020).....................................11

*United States v. Urkevich*,
   No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019)....................................................14

*United States v. Vazquez Torres*,
   No. 19-CR-20342, 2020 WL 4019038 (S.D. Fla. July 14, 2020)..........................................15

**Statutes**

18 U.S.C. § 3553(a) ................................................................................................ *passim*

18 U.S.C. § 3582(c) ................................................................................................ *passim*

**Other Authorities**

U.S.S.G. § 1B1.13................................................................................................10, 13

U.S.S.G. § 5C1.1................................................................................................13

**INTRODUCTION**

The United Nations defines torture as a term of solitary confinement lasting more than 15 days; Defendant Douglas Hodge served the first 29 days of his sentence in solitary confinement. The four weeks and one day that Mr. Hodge endured in sensory isolation, with an average of less than 15 minutes per day outside of the four walls of his seven by eleven foot cell constitute a punishment far more punitive than that contemplated by this Court when it imposed a sentence "sufficient but not greater than necessary" on February 7, 2020.  Mr. Hodge, therefore, requests that the Court grant his immediate compassionate release by modifying his sentence to time served with a condition that he serve the remaining term in home confinement.  In the alternative, Mr. Hodge requests that this Court, at a minimum, modify his custodial sentence downward to account for the severely punitive conditions he is experiencing in prison, which were not anticipated by this Court at the time of Mr. Hodge's sentencing.  Finally, Mr. Hodge requests that this Court order that upon Mr. Hodge's release, he be allowed to self-quarantine for two weeks in home confinement rather than forced to endure a further 14 days of solitary confinement.[1]

---

[1] Mr. Hodge filed a Notice of Appeal on April 8, 2020, Dkt. No. 1061, and pursuant to his subsequent motion, the First Circuit stayed the appeal pending disposition of his 28 U.S.C. § 2255 motion on May 19, 2020. *United States v. Hodge*, No. 20-1418 (1st Cir. May 19, 2020).  This Court entered an Order denying Mr. Hodge's Section 2255 motion on July 2, 2020, Dkt. No. 1354, and Mr. Hodge notified the First Circuit of this Court's Order on July 6, 2020. *United States v. Hodge*, No. 20-1418 (1st Cir. July 6, 2020).  The First Circuit has not yet lifted the stay of appeal.  This Court, therefore, currently has jurisdiction to rule on the current motion. *Cf. United States v. Naphaeng*, 906 F.3d 173, 178 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1233 (2019) (holding that the pendency of an appeal did not strip the district court of jurisdiction to enter a final restitution order where the "appeal had been stayed and concerns about shared jurisdiction had been abated").  Yet even if the stay of appeal had not conferred jurisdiction back on this Court to rule on this motion, this Court has the authority to issue an indicative ruling pursuant to Federal Rule of Criminal Procedure 37(a) and Federal Rule of Appellate Procedure 12.1. *See id.* at 178 n.3 ("To be sure, the district court would have been well-advised to have engaged the gears of the conventional Rule 12.1(b) protocol, and to have requested a temporary remand.  Such a course of action would have eliminated any lingering doubts about the district court's authority to act.").  Under these rules, if the Court entertains a motion and states "either that it would grant the motion" or "that the motion raises a substantial issue," Mr. Hodge is to notify the circuit clerk of such a statement and "the district court may decide the motion if the court of appeals remands for that purpose." Fed. R. Crim. P. 37(a)–(c); *see also id.*, Advisory Committee Notes (noting that, "[i]n the criminal context, the Committee anticipates that Criminal Rule 37 will be used primarily if not exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1) . . ., reduced sentence motions under Criminal Rule 35(b), and ***motions under 18 U.S.C. § 3582(c)***") (emphasis added).  If this Court concludes that it does not have jurisdiction to rule on the current motion, Mr. Hodge moves in the alternative for an indicative ruling pursuant to Rule 37(a).

## BACKGROUND

**I.     Procedural Background**

On February 7, 2020, this Court sentenced Mr. Hodge to, *inter alia*, nine months' imprisonment, 500 hours of community service, and a fine of $750,000, and ordered him to surrender to the Bureau of Prisons ("BOP") on March 20, 2020. Dkt. No. 868. At that time, Mr. Hodge was fully prepared to self-surrender by March 20, 2020, as ordered, consistent with his strong desire to accept responsibility, make amends for his conduct, and promptly commence his sentence so that he could complete his term of incarceration, return to his family as quickly as possible, and thereafter begin to rebuild his life.

As the COVID-19 pandemic began disrupting life across the country, Mr. Hodge twice requested an extension of his self-surrender date, Dkt. Nos. 939, 1102, which the Court granted, ultimately setting Mr. Hodge's self-surrender date for June 30, 2020. Dkt. Nos. 940, 1128. In his second motion for an extension of the self-surrender date, Mr. Hodge also requested that the Court modify his sentence to a term of home confinement. Dkt. No. 1102. On April 30, 2020, the Court denied that request, but observed that the pandemic "is an unprecedented and continually evolving cause of concern" and noted "the particular transmission risk in penitentiary facilities." Dkt. No. 1128 at 2. The Court concluded that "[i]f the public health crisis has not abated by the time of the extended report date, the Court will entertain further motions." *Id.* at 3. Thereafter, without seeking a further continuance and for the reasons set forth below, Mr. Hodge surrendered to FCI Otisville on June 23, 2020, and commenced his term of incarceration.

**II.    Mr. Hodge Needed to Self-Surrender During the COVID-19 Pandemic Due to a Family Health Emergency.**

A family health emergency caused Mr. Hodge to self-surrender in late June. ███

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

    ██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████ Mr. Hodge simply could not wait for the pandemic to abate, over an indefinite period of time, to begin serving his nine-month term.

### III. Mr. Hodge Has Already Served a Significantly More Punitive Sentence Than the Court Intended.

Mr. Hodge has already endured a significantly more punitive sentence than the "sufficient but not greater than necessary" sentence that this Court intended for Mr. Hodge to serve. Upon surrendering, and pursuant to current BOP policy, Mr. Hodge was initially placed in a two-week

quarantine.[2] As Mr. Hodge's initial 14-day period was nearing completion, he learned that he would need to spend an additional week in solitary confinement. As that third week began, Mr. Hodge learned that his stay in solitary confinement would be indefinite. Mr. Hodge served 29 days in solitary confinement.

Mr. Hodge was officially in a medical "quarantine," but for all practical purposes he was serving a term of solitary confinement. He spent every minute of every day in the same seven-by-eleven foot cell – save for his approximately two-minute round trip walk to pick up his meals, occasional shower, and the infrequent phone call he was able to place. As of this filing, he has been able to place a total of eight phone calls to family members (each limited to less than ten minutes) and two phone calls to his lawyers over a five-week period. Furthermore, his cell was not in the federal prison camp to which he was assigned, but rather in the adjacent medium security BOP facility.

## ARGUMENT

This Court has the authority to grant Mr. Hodge relief from the unduly harsh punishment that he is enduring by modifying his sentence to home confinement pursuant to 18 U.S.C. § 3582(c). Mr. Hodge meets the required criteria under the statute: 30 days have lapsed since he requested the BOP to bring a motion on his behalf; he has demonstrated "extraordinary and compelling reasons" for a modification; and such a modification would be consistent with the factors set forth in 18 U.S.C. § 3553(a), the BOP's own policy, and the Sentencing Guidelines.

---

[2] *Correcting Myths and Misinformation about BOP and COVID-19*, BOP.gov (last accessed July 24, 2020), https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf ("When new inmates come into a BOP facility, they are quarantined for 14-days to ensure they remain asymptomatic before being introduced into the main population.")

**I.      Mr. Hodge Is Permitted to Petition the Court for Compassionate Release Under 3582(c)(1)(A).**

On June 24, 2020, Mr. Hodge's counsel, Brien O'Connor, sent a letter to the warden of FCI Otisville and the General Counsel at the BOP's Northeast Regional Office requesting that the BOP petition the Court to modify Mr. Hodge's sentence to home confinement pursuant to 18 U.S.C. § 3582(c).  Ex. C (B. O'Connor Letter).  Mr. O'Connor followed up via email with the BOP's Northeast Regional Office on July 10 and July 13, but Regional Counsel for the BOP responded that he could not confirm that the BOP had any response to the request.  Ex. D (D. Howard E-mails).  Thirty days have now passed since the date of Mr. Hodge's first request without any action or response from the BOP.  Mr. Hodge, therefore, may petition the Court under 18 U.S.C. § 3582(c).  *See* 18 U.S.C. § 3582(c)(1)(A) (Defendant may petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.").

**II.     "Extraordinary and Compelling Circumstances" Warrant Modification of Mr. Hodge's Sentence.**

In granting defendant Toby Macfarlane's motion pursuant to 18 U.S.C. § 3582(c), this Court found "extraordinary and compelling circumstances" due to "1) the COVID-19 pandemic and the national emergency declared by the President of the United States; 2) the particular risk of infection and transmission risk in penitentiary facilities; 3) the fact that the defendant is a non-violent first-time offender who does not pose a danger to the community; and 4) the fact that he has been (and will be for the next week) subject to a quarantine in solitary confinement at a higher

security facility." *United States v. Macfarlane*, 438 F. Supp. 3d 125, 127 (D. Mass. 2020).[3] Mr. Hodge is in far more punitive and high-risk conditions than those experienced by Mr. Macfarlane with respect to each of these enumerated factors.

*First*, the COVID-19 pandemic continues to present an ongoing national emergency, in many respects more severe than at the time of Mr. Macfarlane's petition. On the day that this Court granted Mr. Macfarlane's request for compassionate release, the United States reported 26,691 new COVID-19 cases, with a 7-day average of 30,188.[4] Yesterday, the United States reported 54,212 new COVID-19 cases, with a seven-day average of 65,628.[5]

*Second*, there remains a "particular risk of infection and transmission risk in penitentiary facilities" – the ten largest known clusters of the virus in the country are all associated with correctional facilities.[6] The virus has "spread like wildfire" through prisons,[7] and as of July 27, 2020, the BOP is reporting 4,311 active cases among inmates – nearly ten times the number that it reported at the time this Court granted Mr. Macfarlane's request for compassionate release.[8] The total number of confirmed infections among federal inmates and prison staff over the course of the pandemic has climbed to 11,317.[9]

---

[3] *See also United States v. Sloane*, No. CR 19-10117-IT, Dkt. No. 647 (finding that compassionate release "may well be warranted in light of the pandemic due to COVID-19, the national emergency as declared by the President of the United States, the risk of infection and transmission for inmates and staff posed by the population density of prisons, and the fact that Defendant is a first time offender who does not pose a danger to the safety of another person or the community," but denying motion because of an unexplained failure to exhaust administrative remedies).

[4] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times (July 27, 2020) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Top%20Stories&pgtype=Homepage

[5] *Id.*

[6] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times (July 24, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html#clusters.

[7] Marc M. Howard, *Prisoners May Hold the Key to Releasing Us from Coronavirus Lockdown*, N.Y. Times (May 29, 2020), https://www nytimes.com/2020/05/29/opinion/coronavirus-prison-outbreak.html.

[8] *COVID-19 Cases*, BOP.gov (last accessed July 27, 2020), https://www.bop.gov/coronavirus.

[9] *Id.*

The particularized danger of COVID-19 in prisons is not just an abstraction for Mr. Hodge. There is a recent – and quite possibly ongoing – outbreak of the disease at FCI Otisville. As of July 27, 2020, FCI Otisville reported 27 inmates with positive tests, and is reporting that one inmate and one staff member continue to have active cases.[10] Because the BOP is not conducting thorough and consistent testing,[11] however, these numbers likely both understate the current extent of the outbreak and portend a larger future outbreak. *See, e.g.*, *United States v. Regas*, No. 3:91-cr-00057, 2020 WL 2926457, at *3 (D. Nev. June 3, 2020) ("Although the Court commends the BOP for taking additional screening measures to detect COVID-19 symptoms . . ., these practices cannot detect infected but asymptomatic individuals."). Unlike Mr. Macfarlane, Mr. Hodge is incarcerated in a facility that is reporting numerous cases of the virus.

Furthermore, as a 62-year-old male, Mr. Hodge faces an elevated risk of severe illness, hospitalization, and death from the virus.[12] A bill recently introduced in the United States Senate and referred to the Committee on the Judiciary provides that any defendant "60 years of age or older" satisfies the "extraordinary and compelling" requirement under 18 U.S.C. § 3582(c)(1) on the sole basis of his or her age given the ongoing COVID-19 pandemic. Ex. E, COVID-19 Safer Detention Act of 2020, S. 4034, 116th Cong. (2020).

***Third***, Mr. Hodge, like Mr. Macfarlane, is a non-violent first-time offender who does not pose a danger to the community. As this Court is aware, Mr. Hodge has no criminal history, has no record of violence or of posing a threat to the community, and has scrupulously adhered to the

---

[10] *See COVID-19 Cases*, BOP.gov (last accessed July 27, 2020), https://www.bop.gov/coronavirus.
[11] Peter Eisler et al., *Across U.S., COVID-19 takes a hidden toll behind bars*, Reuters Special Report (May 18, 2020), https://www.reuters.com/investigates/special-report/health-coronavirus-usa-jails.
[12] *Older Adults: Coronavirus Disease 2019 (COVID-19)*, CDC (June 25, 2020), cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("Among adults, the risk for severe illness from COVID-19 increases with age."); *If you are at higher risk: How to reduce risk of infection and what to do if you get sick*, Harvard Health Publishing (last updated May 6, 2020), https://www.health.harvard.edu/diseases-and-conditions/if-you-are-at-higher-risk ("Anyone 60 years or older is considered to be at higher risk for getting very sick from COVID-19.").

Court's restrictions imposed on him during the pendency of these proceedings. The Court also recognized Mr. Hodge's significant "prior philanthropy and good works" at his sentencing. Hodge Sentencing Tr., Dkt. No. 840 at 64.

*Fourth, and most importantly,* Mr. Hodge spent 29 days in solitary confinement – every day in the same cramped cell, alone, without any outside stimulation aside from his short walk to pick up his meals and the infrequent time-limited phone call. This four-week and one day "quarantine" is double the period constituting a prohibited practice amounting to torture under the United Nations Nelson Mandela Rules. *See* United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), Rules 43-45. Judges have noted that the United Nations calls for a ban on any period of solitary confinement longer than 15 days. *See, e.g.*, *Glossip v. Gross*, 135 S. Ct. 2726, 2765 (2015) (Breyer, J., dissenting). And when "[e]ven a few days of solitary confinement will predictably [result in] abnormal [brain] pattern[s] characteristic of stupor and delirium," *id.* (internal citation and quotation marks omitted), Mr. Hodge's 29 days of sensory isolation necessarily had a devastating and painful impact.

Although Mr. Hodge's period of solitary confinement was technically labeled a "quarantine," by any definition, he served 29 days in complete isolation amounting to solitary confinement. *See Foster v. Comm'r of Correction*, 484 Mass. 698, 731 (2020) (observing that solitary confinement, even when imposed in mitigation of COVID-19, "bears a . . . terror and peculiar mark of infamy.") (quoting *Davis v. Ayala*, 576 U.S. 257, 287 (2015) (Kennedy, J., concurring)). As the Supreme Judicial Court observed, a term in solitary quarantine raises the same concerns as a period of punitive solitary confinement, with potential effects including "anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors." *Id.*; *see also Regas*, 2020 WL 2926457, at *3 (granting compassionate release in part because

8

"placing Defendant in solitary confinement for the indefinite future to protect him from contracting COVID-19 is a severe and extreme measure under the[] circumstances"). Mr. Hodge further must bear the anguish of knowing that the BOP may order him to return to solitary quarantine at any point during his term of imprisonment in response to an outbreak of COVID-19, and – barring an order from this Court – he will be required to endure a further two-week period of solitary confinement prior to his release.

Finally, the government recently acknowledged that spending a period of incarceration in a medium security facility rather than a federal prison camp warrants a sentence reduction. Sidoo Gov't Sentencing Memorandum, Dkt. No. 1377 ("At the same time, given that Sidoo is not a United States citizen, it is likely that Sidoo will be required to serve any sentence in a minimum security prison, rather than a federal prison camp, as defendants in related matters have."). If serving a sentence in a medium security prison results in a sentencing reduction, then a 29-day period of solitary confinement (that similarly is in a medium security facility) warrants immediate compassionate release.

\* \* \*

These four factors – the ongoing, and increasingly severe, pandemic; the risk of infection in prisons in general and at FCI Otisville in particular; Mr. Hodge's status as a non-violent, first-time offender; and Mr. Hodge's endurance of an over four-week period in solitary confinement, and prospect of further periods of solitary confinement, establish the requisite "extraordinary and compelling reasons" to modify Mr. Hodge's sentence under Section 3582(c)(1)(A)(i). *See Macfarlane*, 438 F. Supp. 3d at 127; *see also, e.g.*, *Regas*, 2020 WL 2926457, at \*2-3 (finding "extraordinary and compelling" circumstances in light of defendant's age and vulnerability to infection, as well as the "severe and extreme measure" of solitary confinement); *United States v.*

9

*Kelly*, No. 13-cr-00059, 2020 WL 2104241, at *7-8, 10 (S.D. Miss. May 1, 2020) (finding extraordinary and compelling circumstances on the basis of the COVID-19 outbreak at the inmate's low-security BOP facility, despite the absence of any risk factors for severe illness); *cf.* Ex. E, COVID-19 Safer Detention Act of 2020, S. 4034, 116th Cong. (2020) (providing that defendants over the age of 60 universally satisfy the extraordinary and compelling reasons requirement).

### III.   Immediate Release to Home Confinement Would Be Consistent With Section 3553(a) Factors, BOP Policy, and the Sentencing Guidelines.

A modification of Mr. Hodge's sentence to probation with a condition of home confinement for the remainder of his term is consistent with the factors set forth in 18 U.S.C. § 3553(a), the BOP's own policy, and the Sentencing Guidelines.[13]

In crafting Mr. Hodge's sentence, this Court considered the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). The sentence that Mr. Hodge has already served – 29 straight days in solitary confinement in the middle of a pandemic – more than satisfies these sentencing needs. Mr. Hodge's four weeks in solitary confinement sends a strong message of deterrence and underscores the seriousness of the offense. The Court will not undermine this message by balancing

---

[13] Section 3582(c)(1)(A) directs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," which are found at Section 1B1.13 of the Sentencing Guidelines. Since the passage of the First Step Act of 2018, the majority of courts to address the issue have held that "a district court may find 'extraordinary and compelling reasons' beyond the examples listed in section 1B1.13's commentary and [that] such a finding remains 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Torres*, No. 87-CR-593 (SHS), 2020 WL 2815003, at *8 (S.D.N.Y. June 1, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). In any event, Mr. Hodge's circumstances also satisfy the explicit policy statements issued by the Sentencing Commission, as addressed below.

10

considerations stemming from an intervening once-in-a-century crisis and a month-long detention in solitary confinement.

Similarly, the sentence that would ultimately result from this Court granting the requested relief would fulfill the statutory purposes of punishment and the Court's "obligation to impose a sentence that is warranted by a defendant's criminal conduct." Dkt. No. 1128 at 2. Because the sentence that Mr. Hodge has served up until now has been far more punitive than this Court could have anticipated at the time of his sentencing, modifying the remainder of his sentence to account for that severity is appropriate to achieve the sentence that this Court sought to impose – namely, a sentence "not greater than necessary" to achieve the purposes set forth in 18 U.S.C. § 3553.

Further, a modification is consistent with BOP policy and its underlying objectives. In recognition of the dangers of transmission within prisons, and in response to Attorney General William Barr's directives, prisons have been releasing thousands of inmates who, like Mr. Hodge, are at elevated risk from the virus and pose no threat to society. In urging the BOP to make increased use of its authority to release inmates to home confinement, Attorney General Barr directed the BOP to consider, among other factors:

- "[t]he age and vulnerability of the inmate to COVID-19";
- "[t]he security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities";
- "[t]he inmate's score under [the BOP's risk assessment tool used to predict recidivism]";
- "[w]hether the inmate has a demonstrated and verifiable re-entry plan," including whether he would face a lower risk of contracting COVID-19 upon release than he would face in his BOP facility; and
- "[t]he inmate's crime of conviction, and assessment of the danger posed by the inmate to the community."[14]

---

[14] Memorandum for Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000.

11

As of July 27, 2020, the BOP has released 7,108 such inmates to home confinement pursuant to these criteria – all of which Mr. Hodge meets.[15]  While the BOP will may release Mr. Hodge on this basis once he has served twenty-five percent of his sentence, s*ee United States v. Pena*, No. CR 16-10236-MLW, 2020 WL 2798259, at *6 (D. Mass. May 29, 2020), there is no guarantee that the BOP will take such action.  This arbitrary twenty-five percent requirement is also at odds with the clear consensus that releasing inmates is one of the most important steps – if not *the* most important step – that BOP has taken and can take to combat the spread of the virus within its facilities.  *See, e.g.*, *United States v. Nkanga*, No. 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible.").  And this twenty-five percent requirement does not take into account Mr. Hodge's four-week term in solitary confinement – a punishment far more severe than merely serving one-quarter of his sentence in a federal prison camp.  *See Pena*, 2020 WL 2798259, at *6 ("These restrictions appear to this court to be a continuation of the restrictive policies and practices of the Bureau of Prisons that prompted, first, the revision of the Sentencing Guidelines in 2016, and then the First Step Act amendment in 2018 permitting prisoners to file Section 3582(c)(1)(A)(i) motions themselves.").  There is simply no reason to require Mr. Hodge to continue to face the duel threats of infection and placement in solitary confinement.

Finally, a modification of Mr. Hodge's sentence to home confinement is consistent with "the kinds of sentence and the sentencing range established" for his offense by the Sentencing Guidelines, 18 U.S.C. § 3553(a)(4), and the Guidelines' applicable policy statements, U.S.S.G. § 1B1.13.  The Court found that the guideline range applicable to Mr. Hodge was zero to six months,

---

[15]   *COVID-19 Home Confinement Information*, BOP.gov (last accessed July 27, 2020), https://www.bop.gov/coronavirus.

12

falling within Zone A of the sentencing table and not requiring any sentence of imprisonment for Mr. Hodge's offenses. *See* U.S.S.G. § 5C1.1(b). Although the Court departed upwards, even where the adjusted guideline range is within Zone B, the Guidelines make clear that a nine-month period of home detention is a permissible sentence. *See* U.S.S.G. § 5C1.1(c)(3) (allowing a sentence of probation with a condition of home detention sufficient to satisfy the minimum period of imprisonment specified in the Guideline range). The Application Notes to the Guidelines encourage courts to "consider imposing a sentence other than a sentence of imprisonment" if the defendant "is a nonviolent first offender and the applicable guideline range is in Zone A or B." U.S.S.G. § 5C1.1, Application Note 4.

[REDACTED]

**IV.  Mr. Hodge Alternatively Requests a Downward Modification of His Sentence.**

In the event this Court declines to order Mr. Hodge's immediate release to home confinement, Mr. Hodge respectfully requests that the Court reduce his sentence to account for the unforeseen punitive conditions he has endured. Pursuant to the formula this Court adopted in Mr. Macfarlane's case, each week that Mr. Hodge serves in solitary confinement at a higher security facility is equivalent to at least one month of the sentence originally imposed. *Macfarlane*, 438 F. Supp. 3d at 127. Mr. Hodge has already spent four weeks in solitary confinement at the adjacent medium security prison, and in the absence of any action by this Court, he will undergo a two-

week solitary quarantine prior to his release. *Cf. United States v. Bakeas*, 987 F. Supp. 44, 50 (D. Mass. 1997) (holding that a "downward departure is called for when . . . an unusual factor makes the conditions of confinement contemplated by the guidelines either impossible to impose or inappropriate"); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) (reducing defendant's sentence under 18 U.S.C. § 3582(c)). As a result, Mr. Hodge respectfully requests that if the Court does not grant his request for immediate release, the Court modify his custodial sentence downward.

V.     **This Court Should Allow Mr. Hodge to Self-Quarantine Upon His Release.**

Finally, Mr. Hodge respectfully requests that the Court order the BOP to allow Mr. Hodge to self-quarantine for two weeks upon his release. The BOP's current practice of forcing inmates to endure solitary confinement for a further two weeks is unjustifiable here.[16] Requiring Mr. Hodge to re-enter solitary confinement, when he can safely self-quarantine at home, is unnecessarily punitive. Courts in this and other districts routinely order defendants to self-quarantine at home for two weeks in lieu of enduring periods of solitary confinement. *See Pena*, No. CR 16-10236-MLW, 2020 WL 2798259, at *9 (D. Mass. May 29, 2020) (ordering immediate released upon a negative COVID-19 test, explaining that quarantine at the prison "would be more punitive than helpful, as it would continue to put [the defendant] at risk of being infected by staff or other inmates"); *United States v. Ford*, No. 00-80974, 2020 WL 4207092, at *4 (E.D. Mich. July 22, 2020) (ordering immediate release rather than a 14-day quarantine in prison); *United States v. Pullen*, No. 98-40080-01-JAR, 2020 WL 4049899, at *9 (D. Kan. July 20, 2020) (same);

---

[16] *Frequently Asked Questions regarding potential inmate home confinement in response to the COVID-19 pandemic*, BOP.gov (last accessed June 9, 2020), https://www.bop.gov/coronavirus/faq.jsp#hc_quarantine ("[P]rior to transfer to home confinement, all inmates must be quarantined at an appropriate BOP facility for 14 days. As the Bureau identifies potential priority candidates for Home Confinement, they will begin to start the quarantine process, regardless of whether they have officially been approved for Home Confinement.").

14

*United States v. Ireland*, No. 17-20203, 2020 WL 4050245, at *6 (E.D. Mich. July 20, 2020) (same); *United States v. Vazquez Torres*, No. 19-CR-20342, 2020 WL 4019038, at *5 (S.D. Fla. July 14, 2020) (same); *United States v. Mueller*, No. 2:08-CR-00139-AB-1, 2020 WL 3791548, at *8 (E.D. Pa. July 7, 2020) (same); *United States v. Jacobs*, No. 4:19-CR-00149, 2020 WL 3637625, at *8 (S.D. Iowa July 2, 2020) (same); *United States v. Hanson*, No. 6:13-CR-00378-AA-1, 2020 WL 3605845, at *7 (D. Or. July 2, 2020) (same); *United States v. Scott*, No. CR 95-202-CCB-2, 2020 WL 2467425, at *5 (D. Md. May 13, 2020); *United States v. Halliburton*, No. 17-CR-20028, 2020 WL 3100089, at *5 (C.D. Ill. June 11, 2020) (same); *United States v. Smith*, No. 15-CR-30039, 2020 WL 3027197, at *7 (C.D. Ill. June 5, 2020) (same); *Kelly*, 2020 WL 2104241, at *9; *United States v. Scparta*, No. 18-cr-578, 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020) (same); *United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508, at *8 (S.D.N.Y. Apr. 2, 2020) (same).

## CONCLUSION

For the reasons set forth above, Mr. Hodge respectfully requests that, pursuant to 18 U.S.C. § 3582(c), this Court modify his sentence to allow for immediate release to home confinement, together with any further conditions determined to be necessary and appropriate by this Court. In the event this Court declines to so modify his sentence, Mr. Hodge respectfully requests that this Court modify his custodial sentence downward by an amount the Court deems appropriate. Mr. Hodge further requests that, upon his release, this Court order that Mr. Hodge is allowed to self-quarantine in home confinement for two weeks, rather than undergo another period of solitary confinement.

Dated: July 27, 2020 			Respectfully submitted,

By: /s/ *Brien T. O'Connor*
Brien T. O'Connor (BBO #546767)
*brien.o'connor@ropesgray.com*
Ezra D. Geggel (BBO# 691139)
*ezra.geggel@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Phone: (617) 951-7000

Joan McPhee (BBO #547869)
*joan.mcphee@ropesgray.com*
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000

Miranda Hooker (BBO# 661569)
*miranda.hooker@troutman.com*
TROUTMAN PEPPER LLP
125 High Street
Boston, MA 02110
Phone: (617) 204-5100

*Attorneys for Defendant Douglas Hodge*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, I filed the foregoing with the United States District Court for the District of Massachusetts using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing.

Dated: July 27, 2020

*/s/ Brien T. O'Connor*
Brien T. O'Connor